# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CARVONDELLA BRADLEY, individually,
JOYCE ELAINE NIEVES, individually,
LaRHONDA WILLIAMS, individually,
CHRIS CROWLEY, individually, DERRICK
BURKE, individually, CHARLES E. BURKE,
individually, GREG BURKE, individually,
CYNTHIA BURKE, individually, BEATRICE
WELLS, individually, and KARL CROWLEY,
individually,

          **Plaintiffs,**

-vs-                                 **Case No.  6:07-cv-1690-Orl-28GJK**

MICHAEL O. LEAVITT, Secretary, U.S.
Department of Health and Human Services,

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| MOTION: | DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (Doc. No. 136) |
|---|---|
| FILED: | December 26, 2007 |

THEREON it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

This declaratory judgment action seeks a declaration of the rights and priorities with respect to Plaintiffs' interest in settlement proceeds pursuant to the Medicare Secondary Payer Act (the "Act"), 42 U.S.C. § 1395y(b)(2) et. seq.   Specifically, Plaintiffs seek a declaration that the Department of Health and Human Services (the "Department") does not have priority claims to settlement proceeds, but rather must take a state court determined pro-rata share of the Decedent's estate as full satisfaction for medical service payments owed.

## I.      BACKGROUND

On November 13, 2004, Charles Burke (the "Decedent") was admitted to Shands Hospital at the University of Florida ("Shands"). Doc. No. 2-4. The Decedent remained at Shands until January 30, 2005, when he succumbed to "multiorgan failure secondary to sepsis and wound infection." Doc. No. 2-4. During the Decedent's hospitalization, the Medicare program ("Medicare") paid $38,875.08 for medical care received by the Decedent.  Doc. No. 2-12 at 2, 5-10.

From May 19, 2003 until November 12, 2004, the Decedent resided at The Manor at Gainesville ("The Manor"), a nursing home facility.  Doc. 2-5.  The Decedent was survived by eleven children, ten of whom are Plaintiffs in the present case. On June 17, 2005, Carvondella Bradley ("Personal Representative"), the Decedent's Personal Representative and a Plaintiff individually herein, alleged the following in the estate's demand letter to the Manor:

> [T]he staff at The Manor . . . deprived [the Decedent] of his statutory
> nursing home resident's rights.  The deprivations/violations of [the
> Decedent's] rights include the failure to provide adequate and
> appropriate health care and protective support services; failing to treat
> [the Decedent] courteously, fairly, and with the fullest measure of
> dignity; and failing to prevent [the Decedent] from abuse and neglect
> in the nursing home.  As a result of these violations of [the Decedent's]
> rights, [the Decedent] suffered significant injury, pain, and ultimately
> death.  [The Decedent] is survived by his eleven children.

Doc. No. 2-5 at 2.  On February 7, 2006, the Personal Representative advised The Manor she was willing to settle the potential claim(s) of the estate if The Manor or its liability insurance provider immediately tendered the full amount of the remaining insurance policy limits.  Doc. 2-6.  On February 10, 2006, The Manor stated there was approximately $53,500 remaining on the insurance liability policy.  Doc. No. 2-7.  On February 21, 2006 the Personal Representative and The Manor agreed to settle all claims for $52,500.  Doc. No. 2-8.   On March 9, 2006, The Manor tendered the settlement amount and the Personal Representative executed a release of all claims of the estate against The Manor.  Doc. No. 2-9.

First Coast Service Options, Inc. ("FCSO") is the primary Medicare Fiscal Intermediary in Florida.  42 C.F.R. § 902.  On April 19, 2006, the Decedent's estate notified FCSO of the settlement proceeds, and associated legal fees and costs.[1]  Doc. No. 2-10; see 42 C.F.R. § 902.  Counsel's letter stated: "There are eleven (11) survivors/beneficiaries under [Florida's Wrongful Death Act, sections 768.16 to 768.26, Florida Statutes,] *also* entitled to a portion of the settlement." *Id*. (emphasis added). Counsel requested that FCSO immediately provide the estate with Medicare's Payment Summary Form and/or lien information regarding the settlement proceeds.  *Id*.

On June 9, 2006, the Centers for Medicare and Medicaid Services ("CMS"), the federal administrator of the Medicare program, responded through FSCO stating that Medicare paid $38,875.08 in conditional payments for medical expenses related to the Decedent's liability settlement.  Doc. 2-12 at 2.  Specifically, Medicare paid for the admission and treatment of the Decedent while at Shands.  *Id*. at 5-10.  According to CMS, the Act requires a Medicare beneficiary

---

[1] On April 19, 2006, counsel for the estate's fees totaled $17,482.50 and costs totaled $4,663.02.  Counsel's cost increased $150 by May 8, 2006.  Doc. No. 2-11.

to repay Medicare for payments it made for medical care if a liability settlement, judgment, recovery, or award has been paid to a beneficiary.  *Id*. at 1.  CMS reduced the total amount owed by the estate to $22,480.89, and explained:

> The Medicare program generally reduces the amount a Medicare beneficiary is required to repay to take into account the costs (such as attorneys' fess) paid by the beneficiary to obtain his or her liability recovery.  You can find the formula we use to decide how much this reduction should be at 42 C.F.R. [§] 411.37.  We have applied the formula and determined that the amount you owed Medicare is $22,480.89.

Doc. 2-12 at 2.  Medicare then notified the Decedent's estate that "[it] must repay Medicare $22,480.89 within sixty (60) days . . . (by 08/07/2006)."  *Id*.

CMS also stated that if the Decedent's estate disagreed with respect to the amount owed, then it could request a waiver and/or an appeal within 120 days or by August 6, 2006.  Doc. 2-12 at 2-3.  A request for waiver is separate and distinct from a request for an appeal.  *Id*.  A beneficiary, according to CMS, may choose both.  *Id*.  A waiver essentially requests that the Medicare program waive all or a portion of the amount a beneficiary owes.  *Id*.  An appeal is a written request asking the Medicare program to review the record if the amount owed is disputed by the beneficiary.  *Id*. Finally, CMS notified the Decedent's estate that failure to repay the amount in full by August 7, 2006, would result in interest accruing on any remaining balance.  *Id*. at 3.  In order to avoid accruing interest, CMS suggested the Decedent's estate pay the amount in full within sixty days even if it sought a waiver or an appeal.  *Id*. at 4.  CMS acknowledged that if Decedent's estate successfully received a waiver or won an appeal CMS would refund any amounts paid.  *Id*.

On June 13, 2006, the estate notified the Department of the Personal Representative's Motion for Equitable Allocation of Third Party Tort Claim Settlement Proceeds Amongst Competing

Independent Claims of Survivors and Estate pending in the Eight Judicial Circuit Court in and for Alachua County, Florida.[2]  Doc. No. 2-13.  The intent of that motion, according to the Personal Representative, was to have a Florida Circuit Court judge differentiate the settlement funds between all claimants including a determination of "how much of the total settlement reflects recovery for medical expenses paid by Medicare."  Doc. No. 2-15 at 2.

On June 30, 2006, the estate advised CMS that:

> . . . CMS's actions in calculating the reimbursement amount [$22,480.89] as contained in its June 9, 2006 correspondence is premature since medical expense recovery has not yet been equitably determined.  Once the [state court] equitably determines how much was recovered for medical expenses, we will be in a position to notify CMS of the entirety of the Estate's settlement amount, and request the discounted reimbursement figure.

Doc. No. 2-15 at 2.  Furthermore, in the event that CMS did not accept the estate's position, the estate requested that the Medicare program ". . . please consider this letter our formal notice of appeal."  *Id*.

On July 12, 2006, the Department responded on behalf of CMS.  Doc. 2-19.  The Department stated that "Medicare's right to seek reimbursement for conditional payments made on behalf of [the Decedent] pursuant to the [Act] will not be limited by a state court action."  *Id*.  The Department indicated that it was not a party to the state court action and, therefore, could not be bound by its judgment.  *Id*.  The Department advised that the state court lacked subject matter jurisdiction over the amount or right of CMS to seek reimbursement pursuant to the Act.  *Id*. at 2.  The Department stated that "Courts have held that 42 U.S.C. § 405(g) is the exclusive method of obtaining judicial

---

[2] On June 30, 2006, the Personal Representative's state court Motion was amended to include Medicare's outstanding balance of $38,875.08.  Doc. Nos. 2-14, 2-15 at 2.

review of claims which arise under the [Act].  *Id*.  According to the Department, "CMS has a priority right of recovery when pursuing reimbursement under the [Act]."  *Id*. at 2.  Indeed, the Department acknowledged that "'[t]he only situation in which Medicare recognizes allocations of liability payments to non-medical losses is when payment is based on a court order **on the merits of the case**.'"  *Id*. (*quoting* Medicare Intermediary Manual § 3418.7) (emphasis added).  Finally, the Department advised the estate that if it wished to dispute the amount of CMS's claim for reimbursement, it must follow the administrative procedures for appeal set forth in 42 U.S.C. § 1395ff before seeking judicial review in any court.  *Id*.  Based on the estate's June 30, 2006 correspondence, the Department acknowledged that the estate appeared to be attempting to initiate the administrative appeals process.  *Id*.

On July 26, 2006, the estate responded maintaining Medicare was only entitled to reimbursement for the amount the state court determined was recovered.  Doc. No. 2-16.

> Of course, any such amount for medical expenses would be a component of the estate claim, and consequently, recoverable by Medicare.  However, it is premature at this time to calculate the recoupment discount as we are entitled to until the estate's damages are determined by the [state court].

*Id*.  Additionally, the estate stated that "Medicare has <u>no</u> priority rights over independent claims of survivors," and the Act does not apply to or against an heir's right of recovery.  *Id*. (emphasis supplied).

On August 14, 2006, CMS notified the estate of its intent to refer the debt to the Department of Treasury for collection.  Doc. No. 2-22.  The estate responded on August 29, 2006, and reminded CMS that it had requested an administrative appeal on June 30, 2006.  Doc. No. 2-18.  On September 11, 2006, CMS replied stating that FSCO has no authority to withdraw a claim on behalf of the

Department once a demand for reimbursement has been made by FSCO.  Doc. No. 2-20.  Based on

the estate's June 30, 2006, correspondence wherein it requested an administrative appeal, CMS

stated it was "unable to honor your request for an appeal." *Id*.  If the estate wished to proceed with an

appeal or request a waiver, CMS referred it back to the procedures described in its June 9, 2006

demand letter.  *Id*.  It is not entirely clear why CMS determined the estate's reasons for requesting an

administrative appeal to be insufficient.

On August 15, 2006, a hearing was held in state court before the Honorable Robert

Roundtree.  Doc. Nos. 2-17, 2-23 (Case No. 2005-CP-1483).  The state court found:

> . . . the values asserted by the Personal Representative's counsel in his
> motion are reasonable and the Court adopts and specifically finds that
> each of the respective ten (10) survivors' claims hold a value of at least
> $250,000.00.  The Court notes that Medicare has asserted a claim of
> lien based upon payments of $38,875.08.  Therefore, the Court finds
> that the total, full value of this case had the total, full value been
> collectible, was/is $2,538,875.08.  . . .  Based on principles of equity,
> the Court determines the **medical expense recovery in the instant
> cause is $787.50**.  The Court has calculated such figure based on such
> component's contribution to the total full value, if such value were
> collectible.

Doc. No. 2-23 at 3.  The state court held that Medicare's entire claim for reimbursement or the total

amount of medical expenses recoverable equaled one and one-half percent (1.5%) of the total claim

recoverable.  *Id*.  Applying that percentage to actual amount recovered from the settlement

($52,500), the state court held that the total amount of medical expenses actually recovered would be

$787.50.

On September 25, 2006, the estate notified the Department and CMS of the state court's

order.  Doc. 2-24.  The estate requested that FSCO "recalculate Medicare's right of reimbursement in

light of the [state] court's finding."  *Id*.  Furthermore, the estate again attempted to assert its

administrative appellate rights, and stated failure to provide such would result in a declaratory judgment action. *Id.* at 2.

On October 12, 2006, the Department responded reasserting its right to seek full repayment. Doc. No. 2-21. "Finally, please be advised that CMS's statutory right to recover extends to any party who has received payment from the primary payer, including but not limited to beneficiaries, attorneys, or physicians." Doc. No. 2-21. Thereafter, the estate paid the debt and commenced the administrative appeals process. Doc. No. 1 ¶ 11.

On December 8, 2006, the estate sought "second level review" of the FSCO/CMS decision. Doc. No. 11-4 at 2. On February 9, 2007, Maximus Federal Services ("Maximus"), a Medicare contractor similar to FSCO that Medicare contracted with to review the estate's Request for Reconsideration, issued an unfavorable decision. The decision stated in pertinent part:

> Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which settlements do not expressly include damages for medical expenses. Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made "with respect to" medical services related to the injury even when the settlement does not expressly include an amount for medical expenses. To the extent that Medicare has paid for such services, the law obligates Medicare to seek recovery of its payments.

Doc. No. 11-6 at 2. Regarding the state court differentiated settlement the decision explained:

> In this case, **the appellant** contends that the Medicare lien against settlement proceeds should be reduced because only $787.50 of the settlement proceeds were apportioned for medical expenses. The appellant has submitted a [state court order] to support this argument. The only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case. In this case, rather than a court order issued on the merits of the case, **the appellant** has submitted an order

> involving the allocation of proceeds in a settlement.  Medicare can
> limit the recovery of conditional payments only when the Court makes
> a decision based on the merits of the case.  A settlement agreement
> does not include a Court decision but rather a negotiation between the
> parties involved without direct involvement from the Court.  The order
> submitted by **the appellant** is advisory; therefore, Medicare can not
> reduce the lien against settlement proceeds based on this order.

*Id.* (emphasis added).  On March 2, 2007, the estate requested an appeal and hearing before an

Administrative Law Judge ("ALJ").  Doc. No. 11-5 at 2.

On May 22, 2007, the ALJ also issued "an unfavorable decision . . . **for the appellant, the**

**Estate of Charles Burke**." Doc. No. 11-7 (emphasis added).[3]   The ALJ always described the

appealing party in the singular form.  *Id.* at 1-7.  The issue before the ALJ was "whether **the**

**appellant** is entitled to a reduction in the amount of the lien levied against settlement proceeds in

accordance with [the Act]."  Doc. No. 11-7 at 2 (emphasis added). The appellant relied on *Denekas*

*v. Shalala*, 943 F. Supp. 1073 (D. IA. 1996), for the proposition that Medicare has no superior right

over survivor's benefits.  *Id.* at 7.  However, the ALJ concluded that the facts and law of *Denekas*

were entirely distinguished from the underlying appeal. *Id.*   The ALJ determined that "Medicare

cannot be bound by the allocation of proceeds unilaterally determined without its participation,'"

and, therefore, under the Act, Medicare cannot be limited by the state court order.  *Id.*   Finally, the

ALJ concluded:

> The Medicare Secondary Payer manual indicates it would honor an
> agreed allocation, **but only if the agreement was reflective of an**
> **actual trial and judgment on the merits**.  An unopposed hearing by a
> probate judge on a matter which had never been litigated is not
> equivalent.  Although counsel has asserted that evidence was taken by
> the state court, none was ever placed in the record, and counsel does
> not suggest the hearing adversarial.   The appellant argues that

---

[3] Plaintiffs argue that, in the findings of fact, the ALJ made *one* reference to the survivors as being "the appellant." Doc. No. 11-7.

> Medicare had notice of the hearings on the allocation motion but did not participate.  The fact remains that Medicare was not a party to the probate proceeding.  It is also quit obvious that its interest in recovering medical expenditures was not otherwise represented in the probate hearing.  Nominally, the "estate" quantified a claim for medical expenses, but there is nothing to suggest it had separate counsel or opposed the 1.5% allocation foisted upon the probate court.  While the appellant argues that the allocation was fair and reasonable, this does not negate the fact that the probate court did not truly adjudicate the issue on the merits.

*Id.* (emphasis added).  The appellant or the estate then sought review of the ALJ's decision from the Medicare Appeals Council.  Doc. 2-2 at 1.

On September 26, 2007, the Medicare Appeals Council ("Council") affirmed the ALJ's findings and held:

> The Council finds that the ALJ correctly determined that "the [estate] is not entitled to a reduction in the recovery demand or lien as determined by Medicare."  The Council finds no error by the ALJ, and accordingly, adopts the ALJ decision.

Doc. No. 2-2 at 3-4.  The Council's decision provided the following instructions regarding the appeal procedure:

> [Y]ou may commence a civil action by filing a complaint in the United States District Curt for the judicial district in which you reside or have your principal place of business.  See 42 U.S.C. § 1395ff(b).  The complaint must be filed within sixty days after the date this letter is received.  42 C.F.R. § 405.1130.

*Id.* at 1-2.  October 23, 2007, the Plaintiffs filed the present declaratory judgment action.  Doc. No. 1.

## II.      THE COMPLAINT

The ten remaining survivors,[4] individually, bring this declaratory judgment action pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. 1331, the Court's federal question jurisdiction.  Doc. No. 1 ¶¶ 1, 2(c).  The survivors maintain that their rights to the settlement proceeds are equal to or not less than the Department's reimbursement rights, and the Department should be bound by the settlement allocations made by the state court.  Doc. No. 1 ¶ 13.  Due to the Department's failure to accept the allocations made by the state court, the survivors allege they have sustained actual prejudice and are uncertain as to their entitlement to the proceeds under state and federal law.  Doc. No. 1 ¶ 15, 16. Thus, they seek a declaration that the Department or the Medicare program: (1) has no priority over survivors' rights in settlement proceeds under Florida's Wrongful Death Act; (2) "should have attempted to allocate undifferentiated settlement proceeds in a wrongful death recovery prior to asserting its Medicare lien rights, where independent survivors compete with the government's Medicare claim;" (3) is bound by allocations made by a state court if the Department or Medicare program refuses allocate settlement proceeds amongst survivors' claims prior to asserting its reimbursement rights; and (4) must pay an interest penalty to the survivors.  Doc. No. 1 ¶ 17(a) – (e).

## III.      DEFENDANT'S MOTION TO DISMISS

The Department's Motion seeks dismissal for lack of subject matter jurisdiction or in the alternative, for failure to state a claim upon which relief can be granted.  Doc. No. 7.  First, the Department asserts the survivors, as individuals, were not parties to either the ALJ's unfavorable decision (Doc. No. 11-7) or the decision of the Medicare Appeals Council (Doc. No. 2-2).  Doc. No. 7 at 8-10.  The Department argues that in order to have standing to invoke the district court's

---

[4] One of the survivors passed away prior to the estate's settlement with The Manor.  Doc. No. 1 at ¶ 3 n. 1.

jurisdiction under 42 U.S.C. § 405(g), an individual must have received a final decision from the Department.  *Id*. at 10.  The Department also argues that the Eleventh Circuit has held "§ 405(h) bars subject matter jurisdiction over claims arising under the [Act] absent exhaustion of remedies."  *Id*. at 13 (*citing Cochran v. U.S. Health Care Financing Admin*, 291 F.3d 775 (11th Cir. 2002).  According to the Department, because the survivors were not parties to the decisions of the Department below, they have failed to exhaust their administrative remedies, and, therefore, they cannot invoke the court's jurisdiction under Section 405(g).  *Id*.  The Department concedes the estate would be a proper party and Carvondella Bradley, in her capacity as the Personal Representative, would be the proper person to bring the action under Section 405(g).  Doc. No. 7 at 11.

Second, the Department argues that Plaintiffs, in addition to improperly invoking Section 405(g), also improperly invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331.  (Doc. No. 7 at 11.)   According to the Department, the present action arises under the Act because Plaintiffs seek a declaration regarding who has priority to settlement proceeds under the Act.  Doc. No. 7 at 11.  The Department argues that 42 U.S.C. § 405(h) "explicitly bars the use of § 1331 as a jurisdictional basis for claims arising under the [Act]."  *Id*.   The Department asserts Section 405(g) is the sole avenue for judicial review of claims arising under the Act.  *Id*.   Therefore, the Department concludes that Plaintiffs' Complaint must also be dismissed for lack of federal question jurisdiction.

Alternatively, the Department argues that even if Plaintiffs are proper parties under Section 405(g), the relief they request is not available under it.   "Pursuant to [Section] 405(g), judicial review is limited to whether the Secretary, in making his final decision, applied the correct legal analysis and whether this decision is supported by substantial evidence."  Doc. No. 7 at 14.  Thus, the

12

Department requests the complaint be dismissed for failure to state a claim upon which relief can be granted.

## IV.    PLAINTIFFS' OPPOSITION

Plaintiffs filed a Collective Response in Opposition to Defendant Government's Motion to Dismiss (the "Opposition"). Doc. No. 11.   In their Opposition, Plaintiffs assert that, pursuant to Sections 768.18(1) and 768.21(3), Florida Statutes that each survivor of the Decedent has a vested right to recover survivor damages.  Doc. No. 11 at 2.   After the Personal Representative settled the claims of the estate and the survivors, and counsel for Plaintiffs received the settlement proceeds, Plaintiffs argue the survivors' property rights in the settlement proceeds vested.  Doc. No. 11 at 2-3. According to Plaintiffs, due to FSCO, CMS, and the Department's interference with each survivors' vested rights, the survivors' individually appealed below.  *Id*. at 3.

Plaintiffs assert that the survivors appealed individually below through "their statutory agent," the Personal Representative.  Doc. No. 11 at 3.  Plaintiffs maintain that because the Personal Representative was the agent of estate and the survivors, the Plaintiffs appeared in every administrative proceeding below.  Doc. No. 11 at 5.   However, Plaintiffs also assert that each survivor individually sought a Request for Reconsideration and a Request for Appeal below.  *Id*.   As evidence of their assertion, Plaintiffs attached two exhibits to the Opposition: a December 8, 2006, letter from counsel fort he Plaintiffs, the Personal Representative, and the estate to Maximus requesting reconsideration; and a March 2, 2007, letter from the same to the Department requesting an appeal of the unfavorable reconsideration.   Doc. Nos. 11-4, 11-5.  The letters list both the estate and the survivors as counsel's clients.  *Id*.   The first paragraph of both letter states:

> [W]e represent Carvondella Bradley, as Personal Representative of the
> Estate of Charles E. Burke, who has brought a wrongful death action

on behalf of both herself as a survivor, nine (9) other survivors, as well
as the Estate of Charles E. Burke.

Doc. Nos. 11-4; 11-5.  Neither exhibit was attached to the Complaint.  Plaintiffs maintain these letters
refute the Department's assertion that Plaintiffs, as individuals, failed to exhaust their administrative
remedies and were not proper parties to bring the present action.  Doc. No. 11 at 3.

Plaintiffs argue, in the alternative, if they are not proper parties under Section 405(g), then
they have a right to invoke the Court's jurisdiction under 28 U.S.C. § 1331.  Doc. No. 11 at 6.
Plaintiffs assert that the Department cannot use Sections 405(g) and 405(h) as both a sword and a
shield, and, therefore, the Court must have jurisdiction under 28 U.S.C. § 1331.

In the Opposition, Plaintiffs maintain that the Court should deny the Department's Motion
because in it the Department acknowledged that Carvondella Bradley, in her capacity as the Personal
Representative, would be a proper party under Section 405(g).  Doc. No. 11 at 7.  According to
Plaintiffs then, the Department's "position puts form over substance, and clearly is contrary to
substance, not form governing the evaluation of pleadings to determine jurisdiction."  *Id.*

Plaintiffs, stating "it is clear the government has not correctly applied the proper legal analysis
to the facts," chose to stand on their allegations in the Complaint regarding the Defendants'
contention that Plaintiffs failed to state a cause of action upon which relief may be granted.  Doc. No.
11 at 7.  Plaintiffs further argue that the Court has the inherent equitable jurisdiction to award them
interest because of the "economic coercion" utilized by the Department and the unconstitutional
taking of Plaintiffs' property rights.  *Id.* at 8.

## V.     THE LAW AND ITS APPLICATION

### A.     Standard of review

The Department seeks to dismiss the Complaint pursuant to Rules 12(b)(1) and (6), Federal Rules of Civil Procedure.   A motion to dismiss should not be granted unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957).   When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).

"In deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits." *Serrano v. U.S.*, No. 07-22346-CIV, 2008 WL 343490 at *1 (S.D. Fla. Feb. 5, 2008) (*citing Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir. 2000)).   Any exhibits attached to the complaint become part of the complaint for a motion to dismiss. *Bland*, 206 F. Supp. 2d at 1204.   However, it is improper for the Court to consider any exhibits attached to a motion to dismiss or any exhibits attached to a plaintiff's response to a motion to dismiss. *Stanley v. Life Ins. Co. of North America*, 426 F. Supp. 2d 1275, 1278 (M.D. Fla. 2006).

### B.     Standing

Standing is a threshold jurisdictional issue which must be addressed prior to and independent of the merits of a party's claims. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).   According to the first sentence of 42 U.S.C. § 405(g), until a proper party has fully exhausted his or her administrative appellate remedies by going through the Department, a federal district court does not have subject matter jurisdiction. *See Cochran*, 291 F. 3d at 779.   The same is

true even if the party is challenging the constitutionality of a portion of the Act or regulations.  *Id*.

Section 405.906(a)(1), Code of Federal Regulations, states:

> **(a) Parties to the Initial Determination**.
> The parties to the initial determination are the following individuals and entities:
>       (1) A beneficiary who files a claim under Medicare Part A or B or has had a claim for payment filed on his or her behalf, or in the case of a deceased beneficiary, when there is no estate, any person obligated to make or entitled to receive payment. . . .  Payment by a third party payer does not entitle that entity to party status.

 Parties to the redetermination, reconsideration hearing, appeal to an Administrative Law Judge, and/or the Medicare Appeals Council review hearings are parties to the initial determination.  *See* 42 C.F.R. § 405.906(b)(1); 42 C.F.R. § 405.1100.  Moreover, the Code of Federal Regulations defines an "Appellant" as:

> . . . the beneficiary, assignee or other person or entity that has filed and pursued an appeal concerning a particular initial determination. Designation as an appellant does not in itself convey standing to appeal the determination in question.

42 C.F.R. § 405.902.  Only those parties who have gone through the administrative appellate process  and received a final determination from the Secretary may seek review in the district court. 42 U.S.C. § 1395ff(b)(1).

      In their Complaint, Plaintiffs specifically allege that they "have exhausted their administrative remedies, and have procured a 'final decision' in order to invoke jurisdiction pursuant to 42 U.S.C. § 405(g)."  Doc. No. 1 at ¶ 2(b).  Moreover, in the Complaint, Plaintiffs also allege that "[a]ll conditions precedent for the maintenance of the instant action have been satisfied."  *Id*. at ¶ 12. Plaintiffs have sufficiently pled a proper basis for standing, and, therefore, the Motion should be denied.

16

### C.   Subject Matter Jurisdiction under Section 405(g)

A court must zealously assure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

Medicare is the federal health insurance program enacted in 1965 as Title XVIIII of the Social Security Act, codified at 42 U.S.C. §§ 1395-1395ggg.  The program provides a range of health services to elderly and disabled persons.  Its health insurance program contains Part A and Part B benefits.

The district court's power to review[5] determinations arising under the Act is limited in the same manner as actions arising under the Social Security Act.  See 42 U.S.C. § 1395ii.  The Act ". . . serves as a backup insurance plan to cover that which is not paid for by a primary insurance plan." *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003).   Pursuant to 42 U.S.C. § 1395y(b)(2)(A), Medicare only pays for medical care and services where: (1) payment has or will be made by a beneficiary's primary insurance provider; and (2) where "payment has been made or can reasonably be expected to be made promptly . . . under a workmen's compensation law or plan of the United States or a State or under an automobile or **liability insurance policy** or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii) (emphasis added). The Act makes Medicare the secondary payer and requires any payments made be conditional payments.  42 U.S.C. 1395y(b)(2)((B)(i).

---

[5] 42 U.S.C. § 1395ii states: "The provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), **(h),** (i), (j), (k), and (l) **of section 405** of the title, **shall also apply** with respect to his subchapter **to the same extent** as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." (emphasis added.)

> Any payment under this subchapter with respect to any item or service . . . **shall be conditioned on reimbursement** to the appropriate Trust Fund . . . when notice or other information is received that payment for such item or service has been or could be made under such subparagraph. If reimbursement is not made [by the beneficiary] to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date such notice or other information is received, the Secretary [of the Department of Health and Human Services] may charge interest. . . .

*Id.* (emphasis added). Thus, by making payments conditional on reimbursement, the program insures its sustainability. *Wilson v. U.S.*, 405 F.3d 1002, 1007 (D.C. Cir. 2005) (citations omitted).

The United States may bring an action against "any entity" directly or indirectly responsible for the payment. 42 U.S.C. § 1395y(b)(2)(B)(ii). In cases where the beneficiary **or other party receives payment from the primary payer such as under a policy of liability insurance, then the beneficiary or other party must reimburse Medicare within 60 days**. 42 C.F.R. § 411.24(h). "CMS has a right of action to recover payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insure that has received a primary payment." 42 C.F.R. § 411.24(h). Moreover, 42 U.S.C. § 1395y(2)(B)(iii) states:

> The United States **shall be subrogated** (to the extent of payment made under this subchapter for such an item or service) **to any right** under this subsection **of an individual or other entity to payment** with respect to such item or service under a primary plan.

*Id.* (emphasis added); *see also* 42 C.F.R. §411.26 ("**With respect to services for which Medicare paid, CMS is subrogated to any individual**, provider, supplier, physician, private insurer, State agency, **attorney**, **or any other entity entitled to payment by a primary payer**.") (emphasis added.)

Pursuant to 42 U.S.C. § 1395ii, a beneficiary or other party wishing to challenge or seek review of the Secretary of the Department of Health and Human Services' (the "Secretary") final

determination under the Medicare Act must do so under 42 U.S.C. § 405(g) of the Social Security

Act.  *See supra,* n. 5; 42 U.S.C. § 405(h); *Heckler v. Ringer*, 466 U.S. 602, 605-07 (1984); *Alabama*

*Hosp. Ass'n v. Califano*, 587 F.2d 762, 765 (5th Cir. 1979); *Wilson v. U.S.*, 405 F.3d 1002, 1006

(D.C. Cir. 2005) ("Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C.

§ 405(g), which is made applicable to the Medicare Act by 42 U.S.C § 1395ii. . . ."); *New York*

*Statewide Senior Action Council v. Leavitt*, 409 F. Supp 325, 327 (S.D. NY 2005).  While 42 U.S.C.

1395ii does not specifically incorporate subsection (g), it does state that the provisions of subsection

(h) shall apply to the Act.  Section 405(h) states:

> **(h) Finality of the [Secretary's] decision**
> The findings and decision of the [Secretary] after a hearing shall be binding **upon all individuals who were parties to such hearing**.  No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency **except as herein provided**.  **No action** against . . . [the Secretary] **shall be brought under section 1331** or 1346 or Title 28 **to recover on any claim arising under this subchapter**.

42 U.S.C. § 405(h) (emphasis added).  Because subsection 405(h) is specifically made applicable to

the Act and it prohibits judicial review of final decisions of the secretary as "except as herein

provided," it necessarily follows that subsection 405(g) is also applicable to the Act.  42 U.S.C. §

405(h); *see Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5-10 (2000) ("Section

405(h) purports to make exclusive the judicial review method set forth in § 405(g)").

Section 405(g) states:

> **(g) Judicial review**
> **Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party**, irrespective of the amount in controversy, **may obtain a review of such decision by a civil action, commenced within sixty days after the mailing to him of notice of such decision** or within such further time as the [Secretary] may allow.  **Such actions shall be brought in the district**

**court of the United States for the judicial district in which the plaintiff resides**, or has his principal place of business . . . .   As part of the [Secretary's] answer the [Secretary] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.   The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing.   The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the [Secretary] or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) or this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.   The court may, on motion of the [Secretary] made for good cause shown before the [Secretary] files the [Secretary's] answer, remand the case to the [Secretary] for further action by the [Secretary], and it may at any time order additional evidence to be taken before the [Secretary], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the [Secretary] shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the [Secretary's] findings of fact or the [Secretary's] decision, or both, and shall file with the court any such additional or modified findings of fact and decision . . . .   Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision.   The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.   Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of the [Secretary] or any vacancy in such office.

42 U.S.C. § 405(g) (emphasis added).   Thus, only under Section 405(g), may a party to a final

decision by the Secretary or the Department obtain review before a district court. *Heckler v. Ringer*,

466 U.S. 605, 614 (1984) (holding that for claims arising under the Act, 42 U.S.C. § 405(g) was the

only basis which provides a federal district court subject matter jurisdiction to review a final

determination of the Secretary or the Department);  *see also Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975).

As set forth above, 42 U.S.C. § 405(h) specifically bars district court subject matter jurisdiction under the Court's traditional federal-question jurisdiction of 28 U.S.C. § 1331.  *Illinois Council*, 529 U.S. at 5 ("We conclude that he statutory provision at issue, § 405(h), as incorporated by § 1395ii, bars federal-question jurisdiction here"); *Salfi*, 422 U.S. at 756-57 ("On its face, this provision bars district court federal-question jurisdiction over suits, such as this one, which seeks to recover Social Security benefits"); *Ringer*, 466 U.S. at 615-16; *Cochran v. U.S. Health Care Financing Administration,* 291 F. 3d 775, 779 (11th Cir. 2002) (holding  42 U.S.C. § 405(h) "strips federal courts of primary federal-question subject matter jurisdiction over Medicare claims"); *Fox v. Harris*, 488 F. Supp. 488, 493, 494 (D.C. Cir. 1980) ("It is clear, however, that Congress expressly intended to deny this Court authority to review statutory claims for Part B Medicare reimbursement [under 28 U.S.C. § 1331]).  Thus, all claims arising under the Act shall be brought only according to 42 U.S.C. § 405(g), and any Medicare claims invoking the district court's federal question jurisdiction must be dismissed for lack of subject matter jurisdiction.  42 U.S.C. § 405(h).

The Court does have subject matter jurisdiction to review final decisions of the Secretary or the Department brought under Section 405(g).  Accordingly, to the extent Plaintiffs invoke the Court's jurisdiction under Section 405(g), Plaintiffs have alleged a proper jurisdictional basis and the Motion should be denied. *See* Doc. No. 1 at ¶ 2b.  However, to the extent Plaintiffs invoke the Court's traditional federal question jurisdiction, the Court does not have subject matter jurisdiction.

**D.  Failure to State a Claim**

Pursuant to Section 405(g), a district court's review of a final decision of the Secretary or the Department is not a trial *de novo*, but a review of the record below to determine whether substantial evidence existed to support the findings.  *See Goodman v. Richardson*, 448 F. 2d 388, 389 (5th Cir. 1971); *Taylor v. Richardson*, 354 F.Supp. 13, 17 (D.C. La. 1973) ("A review of the Secretary's decision by a Federal District Court is not a trial de novo").  Based on the record, a district court is limited to affirming, reversing, or remanding the final decision of Secretary or Department.  42 U.S.C. § 405(g); *Salfi*, 422 U.S. at 763 n. 8.  Therefore, a Section 405(g) action is not a original action, but an appeal.

Turning to Rule 12(b)(6), Plaintiffs seek: (1) a declaration that Medicare has no priority to settlement proceeds over the claims of survivors/beneficiaries of the estate; (2) a declaration that the Department, CMS, and FSCO should have attempted to allocated the undifferentiated settlement proceeds prior to calculating its lien amount and asserting its lien rights; (3) a declaration that when the Department fails to allocate undifferentiated settlement proceeds prior to asserting its lien rights, the Department is bound by a state court allocation of the same and "shall not impose the Medicare lien rights on the respective shares of each survivor;" and (4) an award of an interest penalty to the Plaintiffs.  Doc. No. 1 at ¶ 17.  With the exception of Plaintiffs third and fourth requests for relief above, Plaintiffs are essentially seeking a determination that the FSCO, CMS, Maximus, the ALJ, and the Medicare Appeals Council all applied the incorrect law when determining that Medicare had priority over the settlement proceeds and Medicare was not bound by the state court allocation.  Such relief is available under the fourth sentence of Section 405(g) if, based on the record, the Court ultimately determines that the Medicare Appeals Council applied the incorrect law.  *See supra*.

22

However, Section 405(g) does not give the Court the power to enjoin[6] the Department nor to award an interest penalty under any circumstances.  *See Salfi*, 422 U.S. at 763 n. 8.  Accordingly, it is beyond doubt that Plaintiffs can prove no set of facts that would entitle them to that particular relief they requested.  Doc. No. 17 ¶ 17(d).  Thus, Defendants' Motion should be Granted in part.

**THEREON it is RECOMMENDED THAT:**

(1)     The Motion be granted in part and denied in part;

(2)     Defendant's request for dismissal on the basis that Plaintiffs lack standing should be **denied**;

(3)     With respect to the request for dismissal for lack of subject matter jurisdiction, the Motion should be **denied** to the extent Plaintiffs invoke jurisdiction under 42 U.S.C. § 405(g) and **granted** to the extent Plaintiffs attempt to invoke jurisdiction under 28 U.S.C. § 1331; and

(4)     Defendant's request for dismissal for failure to state a claim for which relief may be granted should be **granted** to the extent Plaintiffs seek injunctive relief and an award of interest against the Department; and

(5)     According to Section 405(g), the Department should be directed to file an Answer and upon doing so the following Scheduling Order should be entered:

---

[6] Plaintiffs third prayer for relief is: "that when the government refuses to allocate wrongful death settlement proceeds amongst independent, competing claims of survivors prior to asserting its Medicare lien rights, the government is bound by the allocation findings made by the state court, and **shall not impose the Medicare lien rights** on the respective shares of each individual survivor."  Doc. No. 1 at ¶ 17(c) (emphasis added).

On or before the following dates, the parties shall file and serve a brief setting forth concisely the basis for the affirmance or reversal of the final decision of the Secretary.   Plaintiffs' Brief is due [60 days from entry of order]; Secretary's Brief is due 60 days after the day on which Plaintiffs' brief is actually filed.   Each brief shall include a detailed analysis of the administrative record, with pinpoint citations of authorities in support of the party's position, and to the administrative record.  It is not sufficient to adopt the facts in the ALJ's decision.  Plaintiffs may seek to remand as a remedy in their appeal brief, but should not separately file an opposed motion to remand or motion for summary judgment.  If the Secretary intends to seek a voluntary remand, he should make every effort to move to remand before the Plaintiffs have expended significant time in preparing the brief ordered above.   The Court will set oral argument if necessary.   Each party shall also e-mail a virus-free copy of their Briefs to Chambers_FLMD_Kelly@flmd.uscourts.gov in either WordPerfect 9.0-11.0 or Microsoft Word 97 – 2003.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** at Orlando, Florida on May 16, 2008.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE