# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CARVONDELLA BRADLEY, individually,
JOYCE ELAINE NIEVES, individually,
LaRHONDA WILLIAMS, individually,
CHRIS CROWLEY, individually, DERRICK
BURKE, individually, CHARLES E. BURKE,
individually, GREG BURKE, individually,
CYNTHIA BURKE, individually, BEATRICE
WELLS, individually, and KARL CROWLEY,
individually,

      Plaintiffs,

-vs-               Case No. 6:07-cv-1690-Orl-28GJK

MICHAEL O. LEAVITT, Secretary, U.S.
Department of Health and Human Services,

      Defendant.
_____

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

  Plaintiffs Carvondella Bradley, Joyce Elaine Nieves, LaRhonda Williams, Chris Crowley, Derrick Burke, Charles E. Burke, Jr., Greg Burke, Cynthia Burke, Beatrice Wells, and Karl Crowley (the "Plaintiffs") appeal to the district court from a final decision of the Secretary of the Department of Health and Human Services (the "Secretary") regarding the Secretary's claim for reimbursement of conditional Medicare Part B payments made on behalf of Plaintiffs' late father, Charles Burke (the "Decedent"). *See* Doc. Nos. 1, 18, 21. Specifically, Plaintiffs appeal the final decision of the Secretary denying Plaintiffs' request to differentiate medical expense payments made on behalf of Burke from undifferentiated settlement proceeds. *See* Doc.

Nos. 1, 18. For the reasons set forth below, the undersigned **RECOMMENDS** that the Secretary's decision be **AFFIRMED**.

I.     **BACKGROUND**

The factual background of this case is detailed in the undersigned's prior report and recommendation (Doc. No. 18) regarding the Secretary's Motion to Dismiss (Doc. No. 7) and is incorporated herein by reference.

On November 13, 2004, the Decedent was admitted to Shands Hospital and, on January 31, 2005, the Decedent succumbed to multi-organ failure secondary to sepsis and wound infection. *See* R. 9, 311, 356, 429; Doc. Nos. 2-4, 2-5. During the Decedent's hospitalization, the Medicare program ("Medicare") paid $38,875.08 for medical treatment. R. 268-73. Plaintiffs, through the personal representative of Decedent's estate, "presented a wrongful death claim to the nursing home's liability carrier" and, without filing a lawsuit, subsequently entered into a settlement agreement with the Decedent's nursing home's liability insurance carrier for $52,500.00 in exchange for a release of all claims. R. 9, 350-53, 429, 432. Plaintiffs notified the Secretary of the settlement agreement and, on June 9, 2006, the Secretary notified Plaintiffs that Medicare claimed $22,480.89 out of the settlement proceeds for reimbursement of conditional medical expenses paid by Medicare. R. 9, 91-100, 146-49.[1]

On June 13, 2006, Plaintiffs filed a motion with the state probate court administering the Decedent's estate to equitably allocate the settlement proceeds between the claims of the

---

[1] Medicare reduced the amount allegedly owed from $38,875.08 to $22,480.89. R. 146-49. "This figure was based on actual Medicare payments of $38,875.08, but took into account procurement costs, such as attorney fees and litigation costs." R. 9. Thus, Medicare reduced its claim by an amount it deemed appropriate to account for the cost of obtaining the settlement from the nursing home's liability insurance carrier.

survivors and the claims of the estate. R. 9, 112-16, 210.[2] The motion alleged that each Plaintiff had a separate claim for mental pain and suffering worth $250,000.00 and that the Decedent's estate had a claim for medical expenses worth $38,875.08. R. 215-17. In the motion, Plaintiffs proposed a pro rata allocation of the settlement proceeds with the Plaintiffs receiving $51,712.50 or 98.5% of the total settlement proceeds and the estate receiving $787.50 or 1.5% of the total settlement proceeds. R. 217-18.[3] On August 15, 2006, an *ex parte* hearing on the motion was held in the state probate court and, on September 18, 2006, Court entered an order adopting Plaintiffs' proposal in full. R. 222-25. The Secretary was not a party to and did not participate in the hearing, although the Secretary did receive notice of the hearing from Plaintiffs. R. 29-30.

On October 12, 2006, after being notified of the state court's order, the Secretary notified Plaintiffs that Medicare would continue to assert its right to seek full reimbursement of the conditional medical expenses paid by Medicare because "[t]he only situation [in which] Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order <u>on the merits of the case</u>." R. 234 (citing Medicare Secondary Payer Manual (CMS Pub. 100-05), Chapter 7, § 50.4.4) (emphasis in original). On October 24, 2006, the Plaintiffs tendered $22,480.89 to Medicare and began the administrative appeals process. R. 237-38. On October 27, 2006, a Medicare contractor, First Coast Service Options, reaffirmed Medicare's "initial determination of the amount/existence of Medicare's claim against settlement proceeds [Plaintiffs] received from a third party due to the negligence incident which gave rise to

---

[2] On June 30, 2006, Plaintiffs' amended the motion to include Medicare's outstanding balance of $38,875.08. R. 215-193.

[3] On July 12, 2006, the Office of General Counsel for the Department of Health & Human Services (the "Department") notified Plaintiffs that the Department "would not be limited by any action in a state court [proceeding] to which it was not a party." R. 10.

medical expenses for which Medicare conditionally paid. . . ." R. 299. Plaintiffs requested reconsideration and on February 9, 2007, another Medicare contractor, Maximus QIC Part A East, issued a decision reaffirming the amount of Medicare's claim for reimbursement against the settlement proceeds. R. 313-14, 361-64. On March 5, 2007, Plaintiffs requested a hearing before an Administrative Law Judge (the "ALJ") with the Office of Medicare Hearings and Appeals-Southern Division. R. 8.

On May 10, 2007, a hearing was held before ALJ Zaring Robertson. R. 17-55. No testimony or evidence was taken at the hearing, but counsel for Plaintiffs offered legal argument in support of Plaintiffs claims. R. 17-55. Plaintiffs' counsel argued that Medicare had no superior right to the individual claims of Decedent's survivors, but only a superior right to the claims of the Decedent's estate. R. 47 (citing *Denekas v. Shalala*, 943 F. Supp. 1073 (S.D. Iowa 1996)). According to Plaintiffs, Medicare's right of reimbursement only applies to that portion of the settlement that was allocated by the state court to the Decedent's estate for medical expenses. R. 48. Plaintiffs also maintained that Medicare was bound by the state court's allocation of the settlement proceeds.

On May 22, 2007, the ALJ issued an unfavorable decision. R. 8-15. The ALJ concluded that the facts and law of *Denekas v. Shalala*, 943 F. Supp. 1073 (S.D. Iowa 1996), were distinguishable from the underlying appeal. *Id*. The ALJ determined that "Medicare cannot be bound by the allocation of proceeds unilaterally determined without its participation," and, therefore, under 42 U.S.C. §§ 1395-1395ggg (the "Act"), Medicare cannot be limited by the state court order. *Id*. In so holding, the ALJ stated the following:

> The Medicare Secondary Payer manual indicates it would honor an agreed allocation, **but only if the agreement was reflective of an**

4

> **actual trial and judgment on the merits**. An unopposed hearing by a probate judge on a matter which had never been litigated is not equivalent. Although counsel has asserted that evidence was taken by the state court, none was ever placed in the record, and counsel does not suggest the hearing was adversarial. The appellant argues that Medicare had notice of the hearings on the allocation motion but did not participate. The fact remains that Medicare was not a party to the probate proceeding. It is also quite obvious that its interest in recovering medical expenditures was not otherwise represented in the probate hearing. Nominally, the "estate" quantified a claim for medical expenses, but there is nothing to suggest it had separate counsel or opposed the 1.5% allocation foisted upon the probate court. While the appellant argues that the allocation was fair and reasonable, this does not negate the fact that the probate court did not truly adjudicate the issue on the merits.

R. 14 (emphasis added). Plaintiffs sought review of the ALJ's decision from the Medicare Appeals Council. R. 6.

On September 26, 2007, the Medicare Appeals Council (the "Council") affirmed the ALJ's findings and held:

> At issue in this case is the Medicare program's recovery of conditional Medicare payments made on behalf of the beneficiary under the Medicare as Secondary Payer (MSP) provisions of the Social Security Act, codified at section 1862(b)(2) of the Act. The ALJ concluded that "Medicare cannot be bound by the allocation of proceeds unilaterally determined without its participation." See the Medicare Secondary Payer Manual (CMS Pub. 100-05), Chapter 7, § 50.4.4. Thus, the ALJ found that Medicare's recovery of conditional payments was not limited by a state probate court order in this case. The Council finds that the ALJ correctly determined that "the [estate] is not entitled to a reduction in the recovery demand or lien as determined by Medicare." The Council finds no error by the ALJ, and accordingly, adopts the ALJ decision.

R. 3-4. The Council's decision provided the following instructions regarding the appeal procedure:

5

> [Y]ou may commence a civil action by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business. See 42 U.S.C. § 1395ff(b). The complaint must be filed within sixty days after the date this letter is received. 42 C.F.R. § 405.1130.

*Id*. October 23, 2007, the Plaintiffs filed the present action. Doc. No. 1.[4] The Court set a briefing schedule (Doc. No. 25) and on September 11, 2008, Plaintiffs filed their brief in opposition to the Secretary's final decision. Doc. No. 27. On November 10, 2008, the Secretary filed a brief in support of his final decision. Doc. No. 31. On April 24, 2009, the Secretary, with leave of Court, filed a supplement to his brief. Doc. No. 36. The case is now ripe for review.

## II.   THE PARTIES' POSITIONS

Plaintiffs assert that Medicare's application of Chapter 7, § 50.4.4 of the Medicare Secondary Payer Manual (CMS Pub. 100-05) (the "Manual") should be invalidated because it punishes wrongful death claimants choosing to settle their claims without a full trial on the merits. Doc. No. 27 at 9. Plaintiffs maintain that the application of Section 50.4.4, which allows Medicare to assert a superior right to undifferentiated settlement proceeds is "fundamentally flawed and invalid." *Id*. (citing *Denekas*, 943 F.Supp. at 1079-80, 1082; *Foster v. Shalala*, 926 F.Supp. 850, 865-66 (N.D. Iowa 1996); *Waters v. Farmers Texas County Mut. Ins. Co.*, 9 F.3d 397, 401 (5th Cir. 1993)). Plaintiffs argue that Medicare should recognize the state court allocations. *Id*. at 18. Furthermore, Plaintiffs assert that Medicare's failure to recognize the state court allocation leads to absurd results because it will discourage wrongful death survivors from settling an action prior to a full trial on the merits simply to obtain Medicare's recognition that

---

[4] On June 9, 2008, the Court entered an order dismissing the Complaint to the extent it invoked the Court's subject matter jurisdiction pursuant to 28 U.S. § 1331, requested injunctive relief, and sought an award of interest. Doc. No. 21. Pursuant to 42 U.S.C. § 405(g), the case proceeded as an appeal to the district court from a final decision of the Secretary.

6

survivor's claims are independent from the claims of the estate. *Id.* Plaintiffs request that the case be remanded to the Secretary with directions that Medicare accept the state probate court's allocation of medical expense recovery. *Id.* at 32.[5]

The Secretary maintains that federal law provides a priority right of recovery, which should not be limited by the state court order because to do so would frustrate the goals of the Medicare Secondary Payer (the "MSP") statute. Doc. No. 31 at 2 (citing 42 U.S.C. § 1395y(b)(2)). The Secretary argues that his final decision is supported by substantial evidence and is in accord with the MSP statute and its implementing regulations. *Id.* at 7. The Secretary maintains that the case law cited by Plaintiffs is not binding and is distinguishable. *Id.*[6] In his supplement, the Secretary maintains that the Eighth Circuit recently held that Medicare was entitled to full reimbursement, without apportionment, for conditional payments under the MSP statute where a decedent's estate and heirs entered into settlement agreement without a full trial on the merits. Doc. No. 36 at 1-3 (citing *Mathis et. al. v. Leavitt*, 554 F.3d 731 (8th Cir. 2009)). The Secretary asserts that the Court should follow the Eighth Circuit's holding in *Mathis* and affirm the Secretary's final decision. *Id.*

## III. STANDARD OF REVIEW

Medicare is the federal health insurance program enacted in 1965 as part of the Social Security Act. *See* 42 U.S.C. §§ 1395-1395ggg. The district court's power to review final

---

[5] Plaintiffs further request that "the Court reserve jurisdiction to entertain a motion to tax costs, and motion to amend the complaint to assert damages resulting from Medicare's erroneous application of incorrect legal principles herein, which have unconstitutionally deprived the [Plaintiffs] of the use of their property for the last two and one-half (2 1/2) years." R. 32. Plaintiffs cite no authority, and the Court knows of no such authority under 42 U.S.C. § 405(g), that would allow the Court to grant such a request.

[6] The Secretary renews his argument, first raised in the Motion to Dismiss (Doc. No. 7), that only the personal representative, Carvondella Bradley, has standing to seek judicial review of the Secretary's final decision. Doc. No. 31 at 7.

7

determinations of the Secretary arising under the Act is limited in the same manner as actions arising under the Social Security Act. *See* 42 U.S.C. § 1395ii.[7] Pursuant to 42 U.S.C. § 1395ii, a beneficiary or other party wishing to challenge or seek review of the Secretary's final determination under the Medicare Act must do so pursuant to 42 U.S.C. § 405(g) of the Social Security Act. *See* supra, n. 5; 42 U.S.C. § 405(h); *Heckler v. Ringer*, 466 U.S. 602, 605-07 (1984); *Alabama Hosp. Ass'n v. Califano*, 587 F.2d 762, 765 (5th Cir. 1979); *Wilson v. U.S.*, 405 F.3d 1002, 1006 (D.C. Cir. 2005) ("Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by 42 U.S.C § 1395ii. . . ."); *New York Statewide Senior Action Council v. Leavitt*, 409 F. Supp 325, 327 (S.D. NY 2005). Once a party has exhausted its administrative remedies and obtained a final decision of the Secretary, a district court has the authority to review the decision and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [the Secretary], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Secretary's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.

---

[7] 42 U.S.C. § 1395ii states: "The provisions of sections 406 . . . of this title . . . shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." (emphasis added.)

1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Congress has empowered the district court to reverse the decision of the Secretary without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse the Secretary's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Secretary properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Eleventh Circuit has held that when reviewing the Secretary's decisions a court "must abide by those decisions 'unless [they are] arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence in the record taken as a whole.'" *Alacare Home Health Services, Inc. v. Sullivan*, 891 F.2d 850, 854 (11th Cir. 1990) (quoting *Carraway Methodist Medical Center v. Heckler*, 753 F.2d 1006, 1009 (11th Cir. 1985)). "The Secretary has amassed considerable expertise in the health care area and absent a strong showing by the plaintiff, 'this court will not substitute its judgment for that of the agency.'" *Sullivan*, 891 F.2d at 854 (quoting *Lloyd Noland Hospital & Clinic v. Heckler*, 762 F.2d 1561, 1565 (11th Cir. 1985)).

## IV. LAW AND ANALYSIS

### 1. The MSP Statute

Medicare provides a range of health services to elderly and disabled persons. Its health insurance program contains Part A and Part B benefits. The MSP "serves as a backup insurance plan to cover that which is not paid for by a primary insurance plan." *Thompson v. Goetzmann*,

9

337 F.3d 489, 496 (5th Cir. 2003). Pursuant to the MSP, Medicare only pays for medical care and services where: 1) payment has or will be made by a beneficiary's primary insurance provider; and 2) where "payment has been made or can reasonably be expected to be made promptly . . . under a workmen's compensation law or plan of the United States or a State or under an automobile or <u>liability insurance policy</u> or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A) (emphasis added). The MSP makes Medicare the secondary payer and requires any payments made be conditioned upon repayment. 42 U.S.C. 1395y(b)(2)(B)(i). Thus, by making payments conditional on reimbursement, the program insures its sustainability. *See Wilson v. U.S.*, 405 F.3d 1002, 1007 (D.C. Cir. 2005) (internal citations omitted).

The MSP and regulations provide Medicare with a private right of action to enforce the reimbursement requirement of the statute. 42 U.S.C. § 1395y(b)(3); 42 C.F.R. § 411.24(g). The United States may bring an action against "any or all entities" directly or indirectly responsible for the payment. 42 U.S.C. § 1395y(b)(2)(B)(iii). In cases where the beneficiary or other party receives payment from the primary payer such as under a policy of liability insurance, then the beneficiary or other party must reimburse Medicare within 60 days. 42 C.F.R. § 411.24(h). "[Medicare] has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insure that has received a primary payment." 42 C.F.R. § 411.24(g).

The MSP and regulations further provide Medicare with a separate and distinct right of subrogation regarding any conditional payments. *Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009). Section 1395y(2)(B)(iv) states:

> The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or other entity to payment with respect to such item or service under a primary plan.

*Id. See also* 42 C.F.R. §411.26 ("With respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer.").

    2.    <u>Medicare Secondary Payer Manual (CMS Pub. 100-05), Chapter 7, § 50.4.4</u>

Chapter 7, Section 50.4.4 of the Medicare Secondary Payer Manual states:

> In general, Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which the settlements do not expressly include damages for medical expenses. Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made "with respect to" medical services related to the injury even when the settlement does not expressly include an amount for medical expenses. To the extent that Medicare has paid for such services, the law obligates Medicare to seek recovery of its payments. <u>The only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case</u>. If the court or other adjudicator of the merits specifically designate amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.

*Id.* (emphasis added). Congress has vested the Secretary with the authority "to prescribe such regulations as may be necessary to carry out the administration" of the Medicare system. 42 U.S.C. § 1395hh(a)(1). The United States Supreme Court has stated that "agency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force

11

of law." *Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1357 (11th Cir. 2005) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)). Nonetheless, a Court should accord great weight to an agency's interpretation of the statute to the extent it is persuasive. *Christensen*, 529 U.S. at 587-88; *Sullivan*, 891 F.2d at 856 (citing *Borden v. Meese*, 803 F.2d 1530, 1535-36 (11th Cir. 1986) (concluding that the agency's interpretation need not be the best one, or the one the court would choose, but it need only be a "reasonable one")). This Court should defer to the Secretary's interpretation of the statute and regulations "unless it is plainly erroneous or inconsistent" with said statute and regulations. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994).

Recently, in *Myers v. Central Insurance Companies*, 2009 WL 77258 at *4-6 (N.D. Ind. Jan. 8, 2009), the Honorable Rudy Lozano held that the MSP statute preempted an Indiana state statute providing a hospital with lien rights. *Id*. As an alternative basis for his decision, Judge Lozano stated the following regarding the Secretary's interpretation of the MSP statute:

> Even if the Indiana Hospital Lien Statute was not preempted, this Court would find Medicare's claim to be superior to that of Parkview because of the United States Department of Health and Human Services' construction of the Medicare statute. "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first question is whether "Congress has spoken to the precise question at issue." *Id*. at 842-43. If so, then the clearly expressed intent of Congress controls. *Id*. at 843. If not, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. If the agency's answer is based on a permissible construction of the statute, then the Court will accept that answer. This process is followed because statutes governing agencies are generally complex and the interpretation of the statute "depend[s]

12

upon more than ordinary knowledge respecting the matters subjected to agency regulations." *Chevron*, 467 U.S. at 842-43.

This Court finds that Congress has not clearly spoken on the precise question presented here regarding the recovery of conditional payments. One could easily make the interpretation that 42 U.S.C. § 1395y(b)(2)(B)(iii) gives Medicare a right to take a direct cause of action. Indeed, the statute states "the United States may bring an action against any or all entities that are or were required or responsible ... to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii) (2008). However, 42 U.S.C. § 1395y(b)(2)(B)(iv) states that "the United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B) (iv) (2008). These subsections could be giving Medicare two separate rights, or subsection (b)(2)(B)(iv) could be stating how Medicare is to take an action under subsection (b)(2)(B)(iii). The possible differing interpretations between these two subsections illustrates that Congress did not clearly and directly speak to the issue of how Medicare is to be reimbursed for conditional payments in this case. Thus, the Court will look to see if Medicare's interpretation of the MSP is reasonable.

Medicare's interpretation of the MSP is reasonable. Medicare's interpretation is found in the Medicare Secondary Payer Manual ("Manual"), Chapter 2-MSP Provisions, which are guidelines established to implement the Medicare sections of Social Security Laws. Pursuant to Section 40.1, Medicare's Recovery Rights, Revision 49, issued 04-07-06 and effective 05-08-06, of the Manual:

> Medicare has a statutory direct right of reimbursement from the liability insurance as well as any entity that has received payment directly or indirectly from the proceeds of a liability insurance payment. <u>Medicare's recovery rights take precedence over the claims of any other party, including Medicaid. Medicare's recovery right is superior to other entities including Medicaid because Medicare's direct right of recover (sic) is explicitly prescribed in</u>

13

> Federal law and other entities' rights are based on either State law or subrogation rights.

Thus, Medicare's interpretation is that Congress intended Medicare to be a secondary payer and should be repaid whenever a primary payer could pay for the service that Medicare has paid for. This includes Medicare recovering conditional payments through either a subrogation action or a direct action.

Congress had intended for Medicare to be a secondary payer, and to be able to be reimbursed if any primary payer, such as an insurance company, could pay instead. *United States v. Baxter International Inc.*, 345 F.3d at 888 (11th Cir.2003); *United States v. Geier*, 816 F.Supp. at 1336 (W.D. Wis.1993) (Medicare was meant to be a secondary payer in order to achieve major fiscal savings in the Medicare program); *Waters*, 9 F.3d at 401 ("[M]edicare will ordinarily pay for the beneficiary's care in the usual manner and then [the government may] seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under the private policy for the services has been determined."), citing H.R.Rep. No. 96-1167, at 389 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. Indeed, Congressional intent was to make sure that Medicare had residual liability and any payment would be repaid by insurance or another primary payer. H.R.Rep. No. 96-1167, at 389 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. JULY 21, 1980.

If the primary payer did not reimburse Medicare then, "the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii) (2008). Through the interpretation of statutory authority coupled with relevant legislative history, it is clear that Medicare is entitled to priority over all other claimants in reimbursement of its conditional payments. *Filippi v. U.S. Dept. of Health and Human Services*, 138 F.Supp.2d 545, 547 (S.D.N.Y.2001). Medicare's interpretation meets the requirement of step two of *Chevron* and, as such, Medicare has a superior claim to that of Parkview

14

*Myers*, 2009 WL 77258 at *6-7 (N.D. Ind. Jan 8, 2009) (emphasis added). Thus, another Court has found that the Secretary's interpretation of the MSP and regulations as promulgated in the manual is reasonable. *Id*.

In *Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir. 1995), the Ninth Circuit held that the Secretary's interpretation of the MSP statute and regulation "to allow full reimbursement of conditional Medicare payments even though a beneficiary receives a discounted settlement from a third party is a rational construction of the statute," and "is consistent with the statute's purpose." *Id*. "The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs." *Zinman*, 67 F.3d at 845.

> [The Secretary's] construction also provides a practical and economical way for Medicare to recover its conditional payments. In the hypothetical case discussed above, the injured victim alleged a variety of damages, some capable of precise computation, some not. Such allegations are not uncommon. [Medicare's] ability to recover the full amount of its conditional payments, regardless of a victim's allegations of damages, avoids the commitment of federal resources to the task of ascertaining the dollar amount of each element of a victim's alleged damages.
>
> Apportionment of Medicare's recovery in tort cases would either require a factfinding process to determine actual damages or would place Medicare at the mercy of a victim's or personal injury attorney's estimate of damages.

*Id*. at 845-46.

In *Mathis v. Leavitt*, 554 F.3d 731, 732 (8th Cir. 2009), a decedent's representatives and survivors sought a declaratory judgment that they had no duty to reimburse Medicare from settlement proceeds for conditional medical expenses paid on behalf of the decedent under a state wrongful death statute. *Id*. The Eighth Circuit held that Congress has authorized Medicare to

recover conditional payments from any entity that receives such payments. *Mathis*, 554 F.3d at 733. Because the state statute allowed for medical expense recovery under the wrongful death statute, the decedent's representative and survivors who received medical expense payments through the settlement agreement were subject to Medicare's right of reimbursement. *Id*.

The MSP provides Medicare with an independent right of reimbursement for conditional medical expense payment from any and all entities who receive such payments. 42 U.S.C. § 1395y(b)(2)(B)(iii). The undersigned recommends that the Court find that the Secretary's interpretation of the MSP, as set forth in the Medicare Secondary Payer Manual (CMS Pub. 100-05), Chapter 7, § 50.4.4, providing Medicare will recognize allocations of liability payments for nonmedical damages only where there is a court order on the merits of the case is reasonable and consistent with the statute and Congressional intent for the MSP program. Without a court order on the merits of the case, after a full adversarial proceeding, Medicare would be "at the mercy of a victim's or personal injury attorney's estimate of damages." *Zinman*, 67 F.3d at 846.[8] Any other conclusion would subvert Medicare's statutory right of reimbursement, independent of its subrogation rights, and thwart the Congressional intent for the MSP program.[9]

---

[8] Although not specifically alleged by Plaintiffs, the undersigned recommends that the Court find the state court proceeding was not reflective of a full trial on the merits because the proceedings were not adversarial and no evidence was taken.

[9] The undersigned recommends that the Court find the cases relied upon by Plaintiffs, *Denekas v. Shalala*, 943 F.Supp. 1073 (S.D. Iowa 1996) and *Foster v. Shalala*, 926 F.Supp. 850 (N.D. Iowa 1996) are unpersuasive and distinguishable. Both cases rely on a state statute prohibiting recovery by a decedent's estate of medical expenses paid by Medicare in a wrongful death action and requiring equitable allocation by a court between the claims of the survivors. *Denekas*, 943 F.Supp. at 1080; *Foster*, 926 F.Supp. at 855-56; *see also* Iowa Code §§ 147.136, 633.336. Florida's wrongful death statute, Section 768.21, Florida Statutes (2003), does not contain similar restrictions or equitable allocation requirements. *Id*.

3. <u>Whether the Secretary is Bound by the State Probate Order</u>

Plaintiffs argue that the Secretary is bound by the allocations made by the state probate court. Doc. No. 27 at 18. In *Baker v. Sullivan*, 880 F.2d 319, 322 (11th Cir. 1989), the Eleventh Circuit held that "[a]s a legal matter, the [Medicare] Appeals Council could determine that the state court judgment is not binding on the Secretary . . . when the Secretary was not a party to the state court action, and no opposing interests were presented in the case." *Id*. (citing *United States v. Smith*, 393 F.2d 318, 321 (5th Cir. 1968)). Similarly, in *Warren v. Secretary of Health and Human Services*, 868 F.2d 1444, 1446-47 (5th Cir. 1989), the Fifth Circuit held that the Secretary "is under no constitutional compulsion to give full faith and credit to the Judgment [of a state probate court], nor is [the Secretary] bound by the Judgment under principles of res judicata since he was not a party to the probate court proceeding." *Id*.[10]

In the present case, the ALJ and the Medicare Appeals Council considered the state court's order, but determined that Medicare was not bound by the allocations made because they were contrary to the Secretary's interpretation of the statute. R. 3-4, 14. Because the undersigned recommends that the Court find the Secretary's interpretation of the MSP statute and regulations is reasonable, the undersigned also recommends that the Court find that the Secretary is not bound by the state court order.

V. **CONCLUSION**

Based on the forgoing, the undersigned recommends that the Court:

(1) Find the Secretary's final decision is supported by substantial evidence and applied the correct law;

---

[10] In *Warren*, the Fifth Circuit did state that the Secretary should consider the state court judgment, but only as "one part of a broader inquiry both into the facts and applicable law." *Id*. at 1447.

(2) **AFFIRM** the Secretary's final decision;

(3) Enter a separate judgment in favor of the Secretary; and

(4) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** at Orlando, Florida on June 11, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Counsel of Record
Unrepresented Parties